UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CHARLES B. GILL, SR.,

                Plaintiff,

v.                                        Case No. 24-cv-1049-pp

HEATHER FREDRICH, *et al.*,

                Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 3), SCREENING COMPLAINT UNDER 28 U.S.C. §1915A AND ORDERING PLAINTIFF TO FILE AMENDED COMPLAINT**

---

      Plaintiff Charles B. Gill, Sr., who is incarcerated at Stanley Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983 alleging that the defendants violated his rights under federal and state law. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 3, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 3)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On October 16, 2024, the court ordered the plaintiff to pay an initial partial filing fee of $11. Dkt. No. 8. The court received that fee on November 1, 2024. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.     Screening the Complaint**

   A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.   The Plaintiff's Allegations

The complaint names as defendants probation officer Heather Fredrich, Jenny R. Caylor, corrections officer Peter A. Lust, unit manager Heather Wilhelm-Copas and librarian Betsy Pribal. Dkt. No. 1 at 1–2. The plaintiff sues the defendants in their individual and official capacities. Id. at 2.

The plaintiff first claims that probation officer Fredrich included false and defamatory information in his revocation summary. Id. at 2. The plaintiff alleges that during a classification file review on June 17, 2024, he learned that Fredrich wrote in his revocation summary that the plaintiff had "engaged in sexual activity with two females without their consent," which he says is false

and "defamed [his] character." Id. The plaintiff attached a copy of his revocation summary. Dkt. No. 1-1 at 1. He asserts that he never has been charged or convicted of a sex crime. Dkt. No. 1 at 2.

The plaintiff also alleges that he reviewed his file a week earlier, on June 11, 2024, and learned that defendant Caylor "slandered [his] name and passed false information in her report about [him]." Id. He cites a page of his "PSU Sex Offender Treatment Evaluation," which Caylor authored on March 23, 2023. Dkt. No. 1-1 at 2. This summary details the plaintiff's alleged sexual assault involving the two females. Id. The plaintiff reiterates that this information is false and says that he was charged only with burglary, bail jumping, resisting an officer, possession of drugs and drug paraphernalia and criminal trespassing. Dkt. No. 1 at 2 (citing Dkt. No. 1-1 at 3 (list of charges related to revocation)).

The plaintiff next alleges that Officer Lust was indifferent to his medical needs. Id. at 3. He says that he suffers from migraines and hypertension, for which he takes medication. Id. The plaintiff says that on June 13, 2024, he woke up with a headache that worsened, and he became dizzy and lightheaded. Id. He later asked Lust for his medication, but Lust told the plaintiff that he had missed morning medication pass for "Keep on Person" medications. Id. Lust told him to "[c]ome back at 4 PM." Id. The plaintiff responded that he "was having a medical emergency" and needed his medication. Id. Lust reiterated that the plaintiff could "come back at 4 PM." Id.

The plaintiff says that he returned to his cell and took acetaminophen, but he remained dizzy. Id. At lunchtime, he took a food tray and returned to his cell, where he again became dizzy. Id. He says that he went to the officer station and yelled to Lust, "CALL HSU!" before passing out. Id. He says he was "in and out of consciousness" but eventually was taken to the Health Services Unit. Id. A nurse checked his vitals, and his blood pressure was elevated. Id. The nurse and the plaintiff's provider retrieved his medication from the officer station and gave it to the plaintiff. Id. The plaintiff says that his blood pressure returned to "the normal range" within a few hours. Id. He alleges that he told Lust that he had high blood pressure, but that Lust refused to give him his medication or provide "any form of aid." Id. at 3–4.

Finally, the plaintiff alleges that Lust, unit manager Wilhelm-Copas and librarian Pribal retaliated against him on different occasions. Id. at 4. He first says that on June 25, 2024, Pribal wrote him a conduct report for eating cookies in the library a few days earlier. Id. The next day, Lust told him not to report to work while that conduct report was being investigated. Id. The plaintiff says that other incarcerated persons were eating cookies in the library, but only he received a conduct report. Id. He sent an email to Mr. Van Ert (he does not say who this person is) about "feeling targeted and singled out." Id. He told Van Ert that he had "a valid suit against this institution" and threated that if prison staff singled him out, "this complaint will be added." Id.

The plaintiff alleges that on June 28, 2024, Pribal terminated him from his institutional job as a law clerk in the library. Id. She stated among her

5

reasons for removing him that his "escalation at the time of the suspension during the investigation was also unnecessary and disruptive." Id. Pribal later told the plaintiff that he "can't say that [he is] going to sue her" and fired him from his job as a result and "for eating cookies at work." Id.

The plaintiff separately alleges that on July 15, 2024, Lust searched his cell. Id. As the plaintiff was speaking with Lust about the items Lust took from the plaintiff's cell, he "looked at the clock, turned to the camera, made an X with [his] arms and said '12:10 Time Stamped, I will see you in court.'" Id. Lust told the plaintiff that he was going to issue him a conduct report for contraband and threats, which he received the next day. Id. The plaintiff spoke with Wilhelm-Copas and told her that Lust had violated his rights. Id. She allegedly responded, "oh well." Id. He says that Wilhelm-Copas "found [him] guilty" of the conduct report, and the plaintiff filed a grievance. Id. He says that he later learned that Wilhelm-Copas had directed Lust to issue him the conduct report. Id. The plaintiff received seven days' loss of dayroom as punishment. Id.

The plaintiff seeks declaratory relief, removal of Fredrich and Caylor's statements from his institutional files, removal of the conduct report from his record and punitive and compensatory damages. Id. at 6.

C. Analysis

The plaintiff seeks to proceed on four unrelated claims that occurred at different times and involve different defendants. He alleges that Fredrich and Caylor defamed him; that Lust was indifferent to his medical needs; and that

Pribal and Lust and Wilhelm-Copas separately retaliated against him for threatening to sue them on different occasions.

Although a plaintiff may bring multiple claims against a single party in the same case, a plaintiff may not bring *unrelated* claims against different defendants in the same case. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007); Fed. R. Civ. P. 18(a) and 20(a)(2). "Joinder that requires the inclusion of extra parties is limited to claims arising from the same transaction or series of related transactions." Wheeler v. Wexford Health Sources, Inc., 689 F.3d 680, 683 (7th Cir. 2012). For example, the plaintiff may bring in one lawsuit all his claims against Officer Lust, but he may add his claim against Fredrich and Caylor or any claim against any other defendant only if those claims "arise 'out of the same transaction, occurrence, or series of transactions or occurrences.'" Id. (citing Fed. R. Civ. P. 20(a)(1)(A)); id. ("A litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot.").

The plaintiff's complaint violates Rules 18 and 20 because it contains four unrelated claims against different defendants. The only defendant involved in more than one claim is Officer Lust, who allegedly ignored the plaintiff's medical needs on one occasion and retaliated against him on another. But even those claims are unrelated and involve different questions of law and fact, and the retaliation claim involves an extra party (Wilhelm-Copas).

Ordinarily, the court would reject the plaintiff's complaint "either by severing the action into separate lawsuits or by dismissing the improperly joined defendants." Owens v. Hinsley, 635 F.3d 950, 952 (7th Cir. 2011) (citing Fed. R.

Civ. P. 21). But the court will not sever this lawsuit into four separate lawsuits, one for each of the plaintiff's unrelated claims. Instead, the court will give the plaintiff an opportunity to choose which of the above-described unrelated claims he wants to proceed on in this case. Within thirty days, the plaintiff may file an amended complaint that focuses on the claim of his choice. If the plaintiff wishes to bring his other claims, he must do so in separate lawsuits, for which he must pay new filing fees. If the court receives from the plaintiff an amended complaint by the deadline the court sets below, the court will screen the amended complaint as required by 28 U.S.C. §1915A. If, by the deadline below, the court does not receive from the plaintiff an amended complaint consistent with the instructions in this decision, the court will allow the plaintiff to proceed only on his claim that Lust was deliberately indifferent to his serious medical needs.

If the plaintiff chooses to file an amended complaint, he should provide the court with enough facts to answer the following questions: 1) Who violated his constitutional rights?; 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4) When did each person violate his rights? The plaintiff's amended complaint should not be long or contain legal language or citations to statutes or cases. It only needs to provide the court and each defendant with notice of what each defendant allegedly did or did not do to violate his rights.

The court is enclosing a copy of its amended complaint form. The plaintiff must list the case number for this case on the first page. He must list the defendants he wants to sue in the caption of the amended complaint. He should

use the spaces on pages two and three to explain the key facts that give rise to the claim he wishes to bring, and to describe which defendants he believes committed the violations that relate to his claim. The amended complaint takes the place of the prior complaint and must be complete by itself. The plaintiff may not refer the court back to his original complaint. He instead must repeat in the amended complaint any of the facts from the original complaint that he believes are necessary to his claim.

As a final note, regardless of whether the plaintiff files an amended complaint, he cannot seek expungement of his disciplinary conviction under §1983. His recourse is a petition for a writ of *habeas corpus*. See Greene v. Meese, 875 F.2d 639, 640 (7th Cir. 1989) (citing Preiser v. Rodriguez, 411 U.S. 475 (1973); and Larsen v. Sielaff, 702 F.2d 116, 118 (7th Cir. 1983)).

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 3.

The court **ORDERS** that the plaintiff may file an amended complaint that complies with the instructions in this order. If the plaintiff chooses to file an amended complaint, he must do so in time for the court to receive it by **January 31, 2025**. If the court receives an amended complaint by the January 31, 2025 deadline, the court will screen the amended complaint as required by 28 U.S.C. §1915A. If the court does not receive an amended complaint by the deadline, or if the amended complaint again seeks to proceed on unrelated claims against different defendants, the court will screen the amended

9

complaint only as it relates to the plaintiff's allegations of deliberate indifference to his serious medical needs by Lust.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$326.24** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Stanley Correctional Institution, where the plaintiff is confined.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 23rd day of December, 2024.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**