UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CHARLES B. GILL, SR.,

                Plaintiff,

v.                                        Case No. 24-cv-1049-pp

PETER A. LUST,

                Defendant.

## ORDER SCREENING AMENDED COMPLAINT (DKT. NO. 10) UNDER 28 U.S.C. §1915A

      On December 23, 2024, the court screened plaintiff Charles B. Gill, Sr.'s *pro se* complaint under 42 U.S.C. §1983 and determined that it sought "to proceed on four unrelated claims that occurred at different times and involve different defendants." Dkt. No. 9 at 6. The court allowed the plaintiff to file an amended complaint focused on only one of his four claims; the court said it would dismiss the others. Id. at 7–8. The court explained that if the plaintiff did not file an amended complaint, the court would "allow the plaintiff to proceed only on his claim that [Officer Peter A.] Lust was deliberately indifferent to his serious medical needs." Id. at 8. On January 16, 2025, the court received the plaintiff's amended complaint. Dkt. No. 10. This order screens the amended complaint.

## I. Screening the Amended Complaint

### A. Federal Screening Standard

As the court explained in the previous order, it must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the amended complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the amended complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The amended complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

In the amended complaint, the plaintiff seeks to proceed only on his claim against Officer Lust, who works at Stanley Correctional Institution (where the plaintiff is incarcerated). Dkt. No. 10 at 1. The plaintiff has sued Lust in his individual and official capacities. Id.

The plaintiff realleges that he suffers from migraines and hypertension, for which he takes the medication propranolol. Id. The plaintiff says that a person regularly taking this medication may suffer "a hypertension flare up" if he does not take his regular daily dose. Id. He says that a "hypertension attack" could cause "myriad, irreversible damages to the vascular system and organs" and that such attacks "certainly cause[] physical damage." Id. at 2.

The plaintiff alleges that on June 13, 2024, he "had been without use of" his medication for two days. Id. at 1. He says that he reordered his medication on June 11, and the Health Services Unit (HSU) sent the medication to his unit

the night of June 12 or early on June 13. Id. at 1–2. He does not say whether he had access to his medication those days, but he alleges that on June 13, he woke up with a headache that worsened as the day went on, and he became dizzy and lightheaded. Id. at 2. At 10:40 a.m., the plaintiff asked Lust for his medication, but Lust told him he had missed morning medication pass for "Keep on Person" medications. Id. Lust told him to "[c]ome back at 4 PM." Id. The plaintiff responded that he "was having a medical emergency" and needed his medication to lower his blood pressure. Id. Lust reiterated that the plaintiff could "come back at 4 PM" for his medication. Id.

The plaintiff says that he returned to his cell, took acetaminophen for his headache "and tried to relax." Id. At lunchtime, he went to retrieve a food tray, but he had to sit down when he became dizzy. Id. He says that he went to the officer station and again asked Lust for his medication, but Lust again told him to come back that afternoon. Id. The plaintiff was able to get a food tray, but he again became dizzy when he returned to his cell. Id. As he felt himself "fading," the plaintiff went to the officer station and yelled to Lust, "CALL HSU!" before passing out. Id. He says he was "in and out of consciousness" but eventually was taken to the HSU. Id. A nurse checked his vitals, and his blood pressure was elevated. Id. The nurse and the plaintiff's provider retrieved his medication from the officer station and gave it to the plaintiff. Id. The plaintiff says his blood pressure returned to "the normal range" within a few hours. Id.

The plaintiff alleges that he told Officer Lust that he had high blood pressure, so Lust knew that he needed his medication. Id. He asserts that

4

Lust's actions "caused a serious disruption and burden of operations at [Stanley], including causing HSU staff to examine, treat and monitor [the plaintiff's] hypertension attack." Id. The plaintiff asserts that Lust was deliberately indifferent to his medical need. Id. at 3. He seeks declaratory relief and punitive and compensatory damages. Id.

C. Analysis

The court analyzes the plaintiff's allegations under the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state a valid Eighth Amendment claim, the plaintiff must allege both that he "suffered from an objectively serious medical condition" and that the defendant was "deliberately indifferent to that condition." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (*en banc*) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." Farmer, 511 U.S. at 835. A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez, 792 F.3d at 776 (citing Farmer, 511 U.S. at 837).

The plaintiff's hypertension is an objectively serious medical condition. See Jackson v. Pollion, 733 F.3d 786, 789 (7th Cir. 2013). The plaintiff also alleges that Lust was aware of his hypertension and his prescription. He says that Lust nonetheless refused to provide the plaintiff his medication because the plaintiff missed morning medication pass. Lust may have had a good reason not to provide the medication outside of the usual medication pass times. It is possible that as a non-medical official, he did not have access to the

medication or the authority to provide it to the plaintiff outside those hours. The plaintiff also says he had not taken his medication for two days, but he does not say that Lust is responsible for him missing those doses. He instead alleges that he ordered his medication from the HSU on June 11 but did not receive it until late on June 12 or early on June 13. It is possible that the plaintiff suffered the hypertension flare up because he did not reorder his medication in time to take the previous days' doses. The plaintiff alleges that he briefly passed out before HSU staff provided him his medication. But he does not say what injury he suffered, if any, because of this incident, and showing a cognizable injury is a required element of an Eighth Amendment claim. See id. at 790 ("No matter how serious a medical condition is, the sufferer from it cannot prove tortious misconduct (including misconduct constituting a constitutional tort) as a result of failure to treat the condition without providing evidence that the failure caused injury or a serious risk of injury.").

Nonetheless, the plaintiff's allegations that Lust was aware of his medical need but refused to provide him his medication satisfy the subjective element of an Eighth Amendment claim. He also alleges that people who suffer hypertension attacks, like the one he says he suffered on June 13, 2024, may sustain "irreversible damage" and "physical injury." Dkt. No. 1 at 2. Construing the allegations in the plaintiff's favor, the court finds that he sufficiently states an Eighth Amendment claim. He will need to provide evidence sustaining his allegations to defeat a motion to dismiss or a motion for summary judgment.

The plaintiff seeks damages and declaratory relief that Lust violated his rights. But under §1983, "declaratory or injunctive relief is only proper if there is a continuing violation of federal law." Kress v. CCA of Tenn., LLC, 694 F.3d 890, 894 (7th Cir. 2012) (citing Green v. Mansour, 474 U.S. 64, 73 (1985)). Because the incident the plaintiff describes is not ongoing, he may not seek declaratory relief. He may proceed only on his request for damages.

The plaintiff also seeks to proceed against Lust in his official capacity. Claims against officials in their official capacities represent another way to plead an action against the entity that they represent or for which they work. Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690, n.55 (1978)). The court construes the official capacity claim as if the plaintiff had brought it against the Department of Corrections (DOC), the agency for which Lust works. Id. at 165–66. And because claims against the DOC are "no different from a suit against the State itself," the court construes this claim as if the plaintiff had brought it against the State of Wisconsin. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Graham, 473 U.S. at 165–66; Monell, 436 U.S. at 690 n.55).

But "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Id. That means that the plaintiff cannot recover monetary damages against Lust in his official, versus his individual, capacity. Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 617 (2002); Williams v. Wisconsin, 336 F.3d 576, 580 (7th Cir. 2003). Because damages are the only relief available in this lawsuit, the court will dismiss the plaintiff's

7

official capacity claim. The plaintiff may proceed against Lust in his individual capacity only.

## II. Conclusion

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the amended complaint and this order to the Wisconsin Department of Justice for service on defendant Peter A. Lust. Under the informal service agreement, the court **ORDERS** the defendant to respond to the amended complaint within sixty days.

The court **ORDERS** that the parties must not begin discovery until after the court issues a scheduling order setting deadlines for completing discovery and filing dispositive motions.

Dated in Milwaukee, Wisconsin this 5th day of February, 2025.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**