CHARLES B. GILL, SR.,

    Plaintiff,

    v.                               Case No. 24-CV-1049

PETER A. LUST,

    Defendant.

## DECISION AND ORDER ON DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

Charles B. Gill, Sr., who was previously incarcerated and is representing himself, brings this lawsuit under 42 U.S.C. § 1983. Gill sues Peter A. Lust, a correctional officer, for alleged deliberate indifference to Gill's serious medical needs in violation of the Eighth Amendment. Lust moves for summary judgment on Gill's claim. For the reasons stated below, Lust's motion for summary judgment is granted and the case is dismissed.

### PRELIMINARY MATTER

On February 5, 2026, Gill filed a sur-reply, though he did not file leave to do so as required by Civil Local Rule 7(i). Whether to grant a party leave to file a sur-reply brief is a question within the court's discretion. "The decision to permit the filing of a surreply is purely discretionary and should generally be allowed only for valid reasons, such as when the movant raises new arguments in a reply brief." *Meraz-Camacho v. United States*, 417 F. App'x 558, 559 (7th Cir. 2011) (citing *Schmidt v. Eagle Waste & Recycling, Inc.,* 599 F.3d 626, 631 n.2 (7th Cir. 2010)). Gill's sur-reply does not include any relevant new information; it

largely restates the arguments he made in his brief in response. As such, Gill's sur-reply will not be considered.

## FACTS

At all relevant times, Gill was housed at Stanley Correctional Institution. (Docket # 44, ¶ 1.) Lust was a correctional officer at Stanley. (*Id.*, ¶ 2.) Gill suffers from chronic hypertension. (Docket # 46, ¶ 1.) He takes a beta-blocker, Propranolol, to manage his hypertension. (*Id.*, ¶ 2; Docket # 44, ¶ 47.) Gill ran out of his Propranolol on June 11, 2024, and put in an order for more. (Docket # 46, ¶ 2.) The Health Services Unit ("HSU") sent the medication to Gill's housing unit either on the night of June 12, or early in the morning June 13, 2024. (*Id.*)

On June 13, 2024, Gill awoke "with a slight headache." (Docket # 46, ¶ 3.) His headache gradually worsened as the day went on. (*Id.*) Gill asserts he "started to get dizzy, light headed, could hardly open his right eye because it was sensitive to light, and his pulse was elevated." (*Id.*, ¶ 4.) At approximately 10:39 a.m., Gill went to the Officer Station in his housing unit to talk to Lust. (*Id.*, ¶ 5.) Gill asked Lust for his medication, and Lust told him that because he missed morning medication pass, which occurred between 10:00-10:15 a.m., he would have to wait until the afternoon pass at 4:00 p.m. (*Id.*, ¶ 6.) Gill responded that his blood pressure was too high and that he needed his medication immediately. (*Id.*, ¶ 7.) Lust refused and asserted that he was following Stanley's policy for "keep on person" medications, which states "No special accommodations will be made to the medication schedules times." (*Id.*; Docket # 44, ¶ 55.)

Gill returned to his cell and took two tablets of acetaminophen for his headache. (Docket # 46, ¶ 8.) At approximately 10:59 a.m., Gill left his cell to go to lunch. (*Id.*, ¶ 9.)

2

He felt dizzy, so he sat down. (*Id.*) [1] About a minute later, Gill got in line for his food. (*Id.*, ¶ 10.) Shortly after, because his blood pressure was too high, Gill again requested his medication from Lust, who again told him to come back at 4:00 p.m. (*Id.* ¶ 11; Docket # 44, ¶ 12.) Gill then went to get his tray, gave the tray to his cellmate, and went back to his cell. (Docket # 46, ¶ 13.) When Gill got back to his cell, he asserts he was feeling very dizzy again. (*Id.*, ¶ 14.) At 11:03 a.m., Gill left his cell and went to the Officer Station because he felt as if he was going to pass out. (*Id.*, ¶ 15.) Gill yelled to Lust "Call HSU!" and then he fell down on one knee. (*Id.*) It is undisputed that Lust immediately called HSU. (*Id.*) Gill states that as he was sitting on the floor, he passed out. (*Id.*, ¶ 18.) Lust states that he did not observe Gill pass out, which Gill confirms, noting Lust went to get the unit Sergeant at the time he passed out. (Docket # 44, ¶ 44.)

Gill was then taken to HSU. (Docket # 46, ¶ 21.) Gill notes that the incident report stated that security staff "called HSU to notify of a [Person In Our Care] with urgent concerns of elevated blood pressure." (*Id.*, ¶ 20.) In the HSU, Gill was examined by Nurse Jessica Flaig, who noted that Gill reported "dizziness, severe migraine, and the inability to open his right eye due to sensitivity to light caused by the migraine." (Docket # 44, ¶ 27.) Gill states he also complained of high blood pressure. (*Id.*) Gill reported that he had not taken his blood pressure medication in 48 hours, and he believed that to be the cause of his symptoms. (*Id.*, ¶ 28.) Gill also told Flaig "that he was late in requesting his blood pressure medication and that he took the last pill on June 11, 2024." (*Id.*, ¶ 29.) Flaig asserts that Gill "denied any loss of consciousness." (*Id.*, ¶ 32.) Gill maintains that he told Flaig he passed

---

[1] The defendants submitted three surveillance videos showing the interaction between Gill and Lust. (Docket # 35-1 through 35-3.) However, the videos do not contain audio. The parties generally agree on the events of June 13, 2024, and in the instances where there is a dispute, the videos do not resolve them. As such, I do not independently cite to the videos.

out but he did not "know if she heard me because I do remember talking softly because of the pain I was in." (*Id.*)

Flaig took Gill's blood pressure and it was 176/99 millimeters of mercury (mm Hg), which is considered high blood pressure/hypertension. (Docket # 44, ¶ 35.) However, it is not indicative of hypertensive crisis and Flaig did not diagnose Gill with hypertensive crisis at the visit. (*Id.*) Hypertensive crisis is where blood pressure readings are at least 180/120 mm HG. (*Id.*, ¶ 36.) Gill states that he experienced "hypertensive urgency," which is when "blood pressure suddenly spikes to an unusually high level" and "can be brought down safely within a few hours with blood pressure medication." (*Id.*) Ten minutes later, Flaig took Gill's blood pressure again, and it was 152/106 mm Hg. (*Id.*, ¶ 39.) This reading is still considered hypertension. (*Id.*) Flaig obtained Gill's blood pressure medication and gave it to him while he was in the HSU. (*Id.*, ¶¶ 41–42.) Prior to leaving HSU, Flaig took Gill's blood pressure again and it was 150/97 mm Hg. (*Id.*, ¶ 42.) Gill also reported that his headache was beginning to subside, and he could open his right eye. (*Id.*) Gill went back to his housing unit, and at 1:55 p.m., he had his blood pressure checked again, and it was 150/97 mm Hg. (Docket # 46, ¶ 28.)

Gill asserts that on October 24, 2025, he was diagnosed with cardiomegaly (enlargement of the heart) and borderline pulmonary venous hypertension. (Docket # 46, ¶ 35.) He states that his pulmonary venous hypertension "was caused because Gill experienced highly elevated blood pressure for a short time, with no medication to lower his blood pressure upon request." (*Id.*) He also states that Lust, instead of giving him his medication, "caused a serious disruption and burden of operations at [Stanley] including

4

causing HSU staff to examine, treat, and monitor the hypertension attack." (Docket # 45 at 5.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. "Admissibility is the threshold question because a court may consider only admissible evidence in assessing a motion for summary judgment." *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax*

5

*Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003)).

## ANALYSIS

Gill argues that Lust was deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights. To establish a deliberate indifference to medical needs claim under the Eighth Amendment, a plaintiff must demonstrate four elements. *Hunter v. Mueske*, 73 F.4th 561, 565 (7th Cir. 2023). First, "there must be a risk of harm to the plaintiff that is so objectively serious as to be 'excessive' (and that risk must in fact materialize)." *Id.* Second, "the defendant must 'know' of the risk (put differently, he must possess subjective awareness that the risk exists)." *Id.* Third, "the defendant's response to the risk must be so inadequate as to constitute 'disregard' of (or deliberate indifference toward) the risk." *Id.* And finally, "the plaintiff must prove that the defendant's deliberate indifference actually *caused* his injury." *Id.* (citing *Roe v. Elyea*, 631 F.3d 843, 864 (7th Cir. 2011) (emphasis in original)).

The Seventh Circuit Court of Appeals has recognized that hypertension "is a serious condition. Untreated it can result in strokes or heart attacks." *Jackson v. Pollion*, 733 F.3d 786, 789 (7th Cir. 2013). However, Gill has not shown that Lust acted with deliberate indifference. Gill has presented no evidence that Lust knew that Gill had not had his medication in over 48 hours. Up until Gill ended up on the floor, there is no evidence in the record demonstrating that Lust was aware of symptoms that required urgent care. As soon as Gill presented with symptoms that appeared urgent, Lust immediately called HSU and had Gill transferred there.

6

Additionally, Gill has not demonstrated that the approximately 20-minute delay between Lust refusing to give him his medication and Gill going to HSU aggravated his condition or needlessly prolonged his pain. *Gomez v. Randle*, 680 F.3d 859, 865–66 (7th Cir. 2012). Gill does not dispute that he "was late in requesting his blood pressure medication," (Docket # 44, ¶ 29), and because of his own actions, he could not take his medication for 48 hours. Gill also does not dispute that he missed morning medication pass and does not explain why. Lust cannot be held liable for a 20-minute delay when Gill caused a much longer delay that likely had more impact both by not promptly renewing his prescription and by missing morning medication pass.

Gill further does not demonstrate that the events of June 13, 2024, exacerbated his condition. An inmate "who complains that delay in medical treatment rose to a constitutional violation must place *verifying medical evidence* in the record to establish the detrimental effect of delay in medical treatment to succeed." *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996) (internal quotation and citation omitted) (emphasis in original).

At most, Gill presents evidence that over a year later, he was diagnosed with cardiomegaly and borderline pulmonary venous hypertension. (Docket # 46, ¶ 35.) However, other than his own speculation, he offers no evidence—medical or otherwise— that these conditions were the result of missing his medication for two days, much less the result of the 20-minute delay caused by Lust. Thus, Gill's speculation is insufficient. *See Herzog v. Graphic Packing Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014) (stating that while a non-movant "is entitled . . . to all reasonable inferences in her favor, inferences that are supported by only speculation and conjecture will not defeat a summary judgment motion") (internal quotation and citation omitted). Finally, while Gill argues that Lust's actions

7

burdened the operations at Stanley, this is irrelevant to the question of whether Lust was deliberately indifferent towards Gill's medical needs.

Because no reasonable factfinder could conclude that Lust acted with deliberate indifference, summary judgment is granted in favor of Lust.

## CONCLUSION

For the foregoing reasons, Lust's motion for summary judgment is granted. Lust also argues that he is entitled to qualified immunity. Because I find in his favor on the merits, however, this argument need not be addressed. As there are no remaining claims, the case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that Lust's motion for summary judgment (Docket # 28) is **GRANTED**.

**IT IS FURTHER ORDERED** that the case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure

8

59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 9th day of June, 2026.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge

9